Submitted on record and briefs August 9, 2005, conviction on Count II of
indictment reversed and remanded for entry of conviction for attempted coercion;
sentences vacated; remanded for resentencing; otherwise affirmed July 12, 2006

## STATE OF OREGON,
*Respondent,*

*v.*

## ANTHONY VANCE GARCIA,
*Appellant.*

## 02FE0235MA; A120723

138 P3d 927

David E. Groom filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Linder* and Wollheim, Judges.

WOLLHEIM, J.

---

\* Linder, J., *vice* Ceniceros, S. J.

## WOLLHEIM, J.

Defendant was charged with and convicted after a jury trial of two counts of coercion, ORS 163.275(1); two counts of menacing, ORS 163.190; and one count each of criminal mischief in the second degree, ORS 164.354; interference with making a report, ORS 165.572; and harassment, ORS 166.065(1). He assigns error to the trial court's admission of a tape recording of a witness's statements to 9-1-1 dispatchers after the incidents giving rise to the charged offenses, and to the court's failure to give a lesser-included offense instruction on the charges of coercion. We conclude that the trial court erred in failing to give the lesser-included offense instruction on one of the counts of coercion.

We state the facts in the light most favorable to the state. *State v. Gibson*, 338 Or 560, 562, 113 P3d 423, *cert den*, ____ US ____ , 126 S Ct 760, 163 L Ed 2d 591 (2005). Defendant lived with Nancy Windsor, his girlfriend, in her house. On the evening of January 29, 2002, Windsor's friend, Kathleen Baggerly, stopped by Windsor's house on her way to work. Defendant answered the door and Baggerly entered. Windsor was in the shower. Baggerly went into Windsor's bedroom to wait for her. When Windsor came out of the shower, she went into her bedroom and visited with Baggerly. Defendant attempted to come into the bedroom, but Windsor excluded him. Defendant became upset, broke a mirror that was hanging on the outside of the bedroom door, and forced open the bedroom door, breaking it; he then entered the bedroom. Baggerly was frightened; Windsor was upset and told defendant to leave. Windsor attempted to call 9-1-1, but defendant hit her in the face and she fell. Defendant told Windsor, "if you call 9-1-1, I'm going to kill you and your family and your friend." Defendant then ripped the phone cord out of the wall and said, "now nobody can call 9-1-1." Everyone was yelling. Again, Windsor told defendant to leave. Defendant was belligerent and told Baggerly, "[I]f you testify, I will kill you and I will kill your family," and "I'm going to kill [Windsor] and you're going to watch and after she dies, then I'm going to kill you." Defendant also threatened to burn Windsor's house. Baggerly was afraid.

Eventually, defendant left the house. After Windsor dressed, Baggerly grabbed her and said, "Let's go now." They went to the 7-Eleven store where Baggerly worked. Windsor left to find a friend. Later, Sergeant Porter, a Bend police officer, stopped by the 7-Eleven store to purchase a soft drink. He recognized Baggerly, whom he had seen on previous visits to the 7-Eleven store, and noticed that she seemed out of sorts. Baggerly described the incident at Windsor's house to Porter, and he drove there, arriving shortly before midnight. Windsor and two male acquaintances of Windsor were present, trying to repair Windsor's phone and searching the house to make sure that defendant was not hidden somewhere. Porter noticed that there was damage to Windsor's bedroom door and to the phone lines. He interviewed Windsor. He described her demeanor as "excited, hesitant, almost paranoid." She reported the described events, and told Porter that she was afraid of defendant. Porter cautioned Windsor to be careful and to report anything that might be of concern to law enforcement.

Windsor called 9-1-1 on three of the next four days after the incident. On January 30, she reported that defendant was knocking at her door and window and that she was hiding in the house in the dark, crawling on her hands and knees to avoid being seen. She told the dispatcher that she was afraid because defendant had threatened her the previous evening and that she had not called the police the night before because defendant had told her that if she did so she would be a "dead woman." On February 1, Windsor reported to the 9-1-1 dispatcher that she saw some men down the street and that, although she could not determine their identities, she was afraid that one was defendant and that because of the threats, he might have come back intending to harm her. On February 2, Windsor reported to the 9-1-1 dispatcher that defendant had called and that she was afraid that he might come back and harm her. She was calling to report the incident just in case, so people would know.

At trial, Windsor's testimony differed from what she had told Porter. Windsor attempted to downplay the seriousness of the incidents. She said that Baggerly had come over on the evening of January 29 to bring her methamphetamine

and Baggerly had already used some before she had arrived at Windsor's house. Windsor testified that defendant was upset by Baggerly's presence because he did not approve of Baggerly due to her drug use. Windsor testified that defendant had not slapped or punched her but had "tapped" her on the face to get her attention, as if to say, "[H]ello, smell the coffee, like this girl is not your friend, she's just using you." She minimized defendant's contribution to the damage to the house, explaining that it had been caused by others. She described the incident of January 29 as a "tussle," and denied that she had been inclined to call 9-1-1 that night. She explained that she had been using methamphetamine at the time of the 9-1-1 calls and that perhaps it had made her "more paranoid, more afraid." Windsor testified that she and defendant are still friends.

The state offered a single tape recording of all of the 9-1-1 calls. Defendant objected, asserting that the statements were inadmissible under OEC 404(3) as evidence of bad acts. In the alternative, if the evidence was admissible, defendant contended that any possible relevance was outweighed by the substantial prejudice of the statements' reference to defendant's subsequent "bad acts." The state asserted that the tape was not offered to prove the truth of its contents or that defendant had committed bad acts, but to show Windsor's state of mind at the time the calls were made, and was directly relevant to prove an element of the charged offenses of coercion—that defendant's threats on January 29 had instilled fear in Windsor. The state also asserted that the tape was admissible under two hearsay exceptions, OEC 803(2) (excited utterance), and OEC 803(18)(a)(b) (statements concerning an act of abuse.) Further, the state asserted, it was admissible to impeach Windsor's testimony at trial and to show bias, *i.e.*, fear of defendant.

The trial court admitted the tape and allowed the prosecutor to play it for the jury, reasoning that the statements were admissible both to impeach Windsor and as substantive evidence probative of the charges of menacing and coercion, specifically, Windsor's state of mind. The trial court rejected defendant's argument that the statements were unfairly prejudicial.

■    On appeal, defendant assigns error to the trial court's admission of the tape, renewing the arguments made at trial. Defendant objected to the admission of the entire tape recording and did not distinguish among the various statements that Windsor had made in each of the three calls. Accordingly, if any one of Windsor's statements contained on the tape recording satisfies a hearsay exception, we will uphold the trial court's ruling on the admissibility of the tape recording. *See State v. Brown,* 310 Or 347, 358-59, 800 P2d 259 (1990) (holding that an objection to evidence as a whole is insufficient when any part of the evidence objected to is admissible). We conclude that the trial court did not err.

ORS 163.465 provides that a person commits the crime of coercion

"when the person compels or induces another person to engage in conduct from which the other person has a legal right to abstain, or to abstain from engaging in conduct in which the other person has a legal right to engage, by means of instilling in the other person a fear that, if the other person refrains from the conduct compelled or induced or engages in conduct contrary to the compulsion or inducement, the actor or another will:

"(a)    Unlawfully cause physical injury to some person; or

"(b)    Unlawfully cause damage to property."

Statements on the tape show that defendant's threats caused Windsor to remain fearful for several days after the incident giving rise to the charges. We agree with the trial court that the taped statements were directly relevant to prove an element of the charged crime of coercion—that defendant's threats on January 29, 2002, instilled fear in Windsor—and that they were admissible under OEC 803(3) as a hearsay exception for statements of "the declarant's then existing state of mind [and] emotion."

Furthermore, we conclude that the trial court did not abuse its discretion in determining that there was nothing "particularly prejudicial" about the content of the tape. *See State v. Johns,* 301 Or 535, 557-59, 725 P2d 312 (1986) (trial court's determination that the evidence would be

unfairly prejudicial reviewed for abuse of discretion). We therefore conclude that the trial court did not err in admitting the taped statements.

■■ In his second assignment of error, defendant contends that, with respect to the two counts of coercion, the trial court erred in failing to instruct the jury on the lesser-included offense of attempted coercion. In reviewing the trial court's refusal to instruct the jury on an applicable lesser-included offense, "[w]e review the evidence in the light most favorable to the establishment of facts that would require those instructions." *State v. Boyce*, 120 Or App 299, 302, 852 P2d 276 (1993). Count I of the indictment charged that defendant committed the offense of coercion by compelling or inducing Windsor to refrain from calling the police. Count II of the indictment charged that defendant committed the offense of coercion by unlawfully and knowingly compelling or inducing Baggerly "to abstain from" testifying against him at trial. The state concedes that there "does not appear to be any evidence that defendant was successful in preventing" Baggerly from testifying at trial, that attempted coercion is a lesser-included offense,[1] and that an instruction on the lesser-included offense of attempted coercion was therefore appropriate as to Count II. *State v. Leckenby*, 200 Or App 684, 117 P3d 273 (2005) (a defendant is entitled to a jury instruction on an applicable lesser-included offense if the evidence and all reasonable inferences support submission of the lesser charge). We agree and accept the concession.

■ The state also contends that, because the evidence is "more than adequate to support a conviction for attempted coercion, the appropriate remedy is remand for entry of a judgment of conviction of the lesser-included offense of attempted coercion." Defendant concedes that "[a] jury could conclude that defendant threatened [Baggerly and Windsor] in order to compel or induce them to abstain from testifying. But the question is whether that was a successful effort."

---

[1] ORS 136.465 provides:

"In all cases, the defendant may be found guilty of any crime the commission of which is necessarily included in that with which the defendant is charged in the accusatory instrument or of an attempt to commit such crime."

Defendant does not dispute that there was evidence sufficient for the jury to find the elements of coercion that would be necessary to convict him of attempted coercion. We therefore agree with the state that the appropriate disposition is a remand for entry of a judgment of conviction on the lesser-included offense of attempted coercion as to Count II. *See State v. Lopez,* 151 Or App 138, 949 P2d 1237 (1997), *rev den,* 326 Or 465 (1998).

Although defendant nominally assigns error to the failure to give a lesser-included instruction on both counts, defendant's argument is addressed only to Count II. Defendant makes no lesser-included offense argument that engages with the facts charged in Count I. We therefore do not address whether the trial court erred in failing to give an instruction on the lesser-included offense of attempted coercion on the coercion charge stated in Count I of the indictment.

Conviction on Count II of indictment reversed and remanded for entry of conviction for attempted coercion; sentences vacated; remanded for resentencing; otherwise affirmed.