Argued and submitted August 26, affirmed December 10, 2008

Kim WILSON,
in his capacity as
Personal Representative of the Estate of
Hazel Fleet, Deceased,
*Plaintiff-Appellant,*

*v.*

Ralph WILSON,
individually and in his capacity as successor trustee
of the Duane B. Fleet Family Trust
UAD December 23, 2002;
Donita Watts; Roxie Watts; and Tracy Watts,
*Defendants-Respondents.*

Union County Circuit Court
041042899; A135419

197 P3d 1141

Matthew Whitman argued the cause for appellant. With him on the briefs was James R. Cartwright.

Jonel Ricker argued the cause and filed the brief for respondent Ralph Wilson.

J. Glenn Null argued the cause for respondents Donita Watts, Roxie Watts, and Tracy Watts. With him on the brief was Mammen & Null, Lawyers, LLC.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

BREWER, C. J.

## BREWER, C. J.

Plaintiff, as conservator for his mother, Hazel Fleet, brought this action against the estate of Duane Fleet, seeking to enforce Hazel's statutory spousal elective share with respect to assets that Duane had placed in a revocable living trust.[1] Plaintiff sought to have the transfer of assets set aside as an illusory transfer or as a violation of public policy. He also asserted claims of fraud and fraudulent conveyance, on a breach of fiduciary duty theory, against Duane's estate. Plaintiff appeals from the trial court's grant of defendants' motion for summary judgment on each of his claims.[2] We affirm.

With one exception, which we discuss below, the facts in this case are undisputed. Accordingly, we will affirm the trial court's grant of summary judgment if defendants are entitled to prevail as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Plaintiff is the only child of Hazel Fleet, who was married to Duane Fleet from 1980 until his death in 2004. Plaintiff had been married to Duane's daughter, Bethel Fleet, until her death in 1961; that marriage produced defendants Ralph Wilson and Donita Watts, who are Duane's grandchildren. Defendants Roxie and Tracy Watts are Donita Watts's children and the great-grandchildren of Duane Fleet.[3] In 2002, Duane created a revocable living trust into which he transferred the majority of his assets, partly to insulate those assets from the statutory elective share that Hazel would be able to exercise at his death. Duane also intended to disinherit plaintiff; the trust provided that the bulk of his assets be distributed to defendants Ralph Wilson and Donita Watts.

---

[1] The statutory elective share provided for a surviving spouse is governed by ORS 114.105(1), which provides, in part:

"If a decedent is domiciled in this state at the time of death and dies testate, the surviving spouse of the decedent has a right to elect to take the share provided by this section. The elective share consists of one-fourth of the value of the net estate of the decedent[.]"

[2] Hazel Fleet died during the pendency of this action, and plaintiff substituted himself as personal representative.

[3] We refer to all four defendants, collectively, as "defendants."

Duane died on June 11, 2004. At that time, Hazel was suffering from dementia; after Duane's death, she was cared for by defendant Ralph Wilson and later by plaintiff. In his will, Duane bequeathed to Hazel $21,000 that he co-owned with her in a joint bank account, and he devised to her the family home that was jointly held in their names. On July 15, 2004, plaintiff filed a petition for guardianship and conservatorship with respect to Hazel and her financial affairs. On September 9, 2004, plaintiff filed a claim against the trust, in which he asserted the statutory spousal elective share on behalf of Hazel. The next day, the court appointed plaintiff as Hazel's temporary guardian and conservator, and the claim against the trust was served on defendants' attorney. Defendants denied the claim, and plaintiff filed this action on October 26, 2004. Hazel died on March 6, 2005.

Plaintiff's second amended complaint asserted five claims for relief. In his first and second claims, plaintiff alleged that, because it was designed to disinherit Hazel, the revocable living trust was both a fraud on her marital rights and a fraudulent conveyance. The third claim alleged that the creation of the trust was an illusory transfer because Duane retained substantial interests in the property transferred to the trust. The fourth claim asserted that the transfer was void as against public policy because it disinherited Hazel. Finally, the fifth claim asserted the statutory spousal elective share on behalf of Hazel.

In his deposition in this case, plaintiff testified that, after Duane's death, Hazel told him that if she had known about the creation of the revocable living trust, she would have dissolved her marriage to Duane. That statement, plaintiff argued, showed that Duane had defrauded Hazel because, in failing to disclose the creation of the trust, he prevented her from dissolving their marriage in order to protect her interest in the assets transferred to the trust. Defendants moved for summary judgment on plaintiff's fraud-based claims, arguing that the only evidence of fraud was the hearsay declaration of Hazel and that that statement was inadmissible; defendants also argued that plaintiff's remaining claims failed as a matter of law. The trial court granted

defendants' motion for summary judgment, and this appeal followed the entry of the ensuing judgment dismissing the action.

■ In his first two assignments of error, plaintiff argues that the trial court erred in granting defendants' motion for summary judgment on his fraud, fraudulent conveyance, and constructive trust claims, and in denying his cross-motion for summary judgment on those claims. The trial court concluded that plaintiff had presented no admissible evidence to support his claims, because Hazel's hearsay declaration was inadmissible. Plaintiff argues that the declaration was admissible under OEC 803(3), because it was a "statement of what she would have done in the past had Duane Fleet told her the truth."[4]

Under ORCP 47 D, a supporting affidavit "shall set forth such facts as would be admissible in evidence." ORCP 47 C provides that "[t]he adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial." Here, plaintiff would have the burden of persuasion at trial on his various claims; accordingly, it was plaintiff's burden on summary judgment to produce admissible evidence in support of them. *Davis v. County of Clackamas*, 205 Or App 387, 394, 134 P3d 1090, *rev den*, 341 Or 244 (2006).

OEC 803 provides:

"The following are not excluded by [OEC 802], even though the declarant is available as a witness:

"* * * * *

"(3) A statement of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain or bodily

---

[4] Defendants argue that plaintiff failed to preserve his first two assignments of error, because plaintiff "failed to respond" to their objection to the hearsay declaration before the trial court. After reviewing the record, we reject that argument. Plaintiff's written submissions, and the colloquy before the trial court, demonstrate that the pertinent issue was adequately presented to that court.

health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of the declarant's will."

Hazel's declaration was offered by plaintiff for its truth. Plaintiff's theory was that, if Hazel had known of Duane's transfers, she would have dissolved their marriage and that, in the dissolution action, the court would have invalidated the revocable living trust, resulting in a property award to her of one-half of the marital estate. Duane committed fraud, plaintiff reasons, because he failed to disclose the transfers to the trust and thus prevented Hazel from dissolving their marriage in order to protect her interests. Plaintiff's fraudulent transfer claim is similarly premised; plaintiff argues that Duane's "failure to make disclosure was designed to cost [Hazel] the opportunity" to dissolve the marriage and, thus, the trust should be voided as a fraudulent transfer designed to defeat Hazel's marital property rights.

■■ The trial court properly excluded Hazel's statement as inadmissible hearsay. OEC 803(3) provides by its terms that only statements of a declarant's *then existing* state of mind meet the exception. A statement of a declarant's then existing state of mind, intent, or plan is admissible under OEC 803(3) "even if [the] statement merely reflects the declarant's state of mind or reasonably supports an inference as to the declarant's state of mind." *State v. Clegg*, 332 Or 432, 441, 31 P3d 408 (2001). However, as the legislative commentary to OEC 803 explains, "[t]he subsection excludes statements of memory or belief, to prove the fact remembered or believed." Laird C. Kirkpatrick, *Oregon Evidence* 730 (5th ed 2007). In that regard, OEC 803(3) codifies a venerable common-law hearsay exception. As Justice Cardozo wrote in *Shepherd v. United States*, 290 US 96, 105-06, 54 S Ct 22, 78 L Ed 196 (1933), "[d]eclarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored." One treatise explains that distinction by noting that "forward-looking statements of

intention are admitted while backward-looking statements of memory or belief are excluded because the former do not present the classic hearsay dangers of memory or narration." John W. Strong, *McCormick on Evidence* § 276, 241 (4th ed 1992). Although statements of a declarant's past state of mind can be admissible where that state of mind is continuous and close in time to the occurrence to which it is relevant, "it is reasonable to require [as a condition of invoking the continuity notion that the declaration] mirror a state of mind, which in light of all the circumstances, including proximity in time, [has some probability of being] the same condition existing at the material time." *Id.* at 232. *See State v. Garcia*, 206 Or App 745, 750-51, 138 P3d 927 (2006) (holding admissible taped statements of victim, made on January 29, to show her fear of defendant on January 30, the date defendant was alleged to have coerced her); *cf. State v. Langley*, 711 So 2d 651, 661 (La 1998) (holding inadmissible, under identical OEC 803(3) exception, tape-recorded statement of the defendant, made in 1994, offered to prove his state of mind during a custodial interrogation in 1992).

Hazel's statement about what she *would* have done *had* she known about the transfers was a statement of belief, offered by plaintiff to prove the fact believed: that is, her belief that she would have divorced Duane had she known of the transfers to the trust. The statement was not a declaration of intent or mental state actually held but, rather, a declaration regarding a mental state or plan that Hazel believed she *would* have had, if she had known about Duane's transfers. Thus, there is no evidence to prove continuity of her mental state because that state *never came into existence*. Because the challenged declaration was the only evidence plaintiff presented in support of his fraud-based claims, plaintiff failed to meet his burden under ORCP 47 D. Accordingly, the trial court properly denied plaintiff's motion for summary judgment, and it properly granted defendants' motion for summary judgment on those claims. We also affirm the grant of summary judgment as to plaintiff's constructive trust claim, because that claim is dependent on his prevailing on the fraud and fraudulent conveyance claims, which, as explained, he does not.

■ Because our analysis of it disposes of plaintiff's remaining assignments of error, we turn to his fifth assignment of error.[5] In that assignment, plaintiff argues that the trial court erred in granting summary judgment to defendants on his claim to exercise Hazel's spousal elective share against the assets in the trust. The trial court determined that Hazel's spousal elective share claim was personal and died with her. Plaintiff asserts that because, as Hazel's conservator, he filed a claim for the elective share before her death, he is entitled to maintain an action against Duane's estate for recovery of the spousal elective share on behalf of Hazel's estate pursuant to ORS 114.155.[6] Filing for the elective share, plaintiff reasons, "perfected" that share, thereby making it a "property right" that survived Hazel's death. In granting defendant's motion for summary judgment, the trial court relied on our decision in *Kirkeby v. Covenant House*, 157 Or App 309, 323, 970 P2d 241 (1998), *rev den*, 328 Or 365 (1999). Plaintiff asserts that this case is distinguishable from *Kirkeby*, because he filed for the spousal elective share before Hazel's death.[7] We disagree.

---

[5] In his third assignment of error, plaintiff claims that the trial court erred when it declined to void the revocable living trust as an "illusory transfer." The trial court granted defendant's motion for summary judgment on that claim because, it reasoned, "the right to claim the elective share is personal to the surviving spouse and dies with the surviving spouse." Because, as we explain below, plaintiff is not entitled to the spousal elective share, the trial court correctly granted defendant's motion for summary judgment on plaintiff's illusory transfer claim. Likewise, plaintiff's fourth assignment of error—that the trial court erred in not setting aside Duane's transfers as "against public policy"—is grounded in his claim to the spousal elective share and, thus, also fails.

[6] ORS 114.155 provides:

"An election under ORS 114.105 may be filed on behalf of a financially incapable surviving spouse by a court acting under ORS 125.650 or by the conservator of the estate of the spouse. The court or conservator may elect against the will only if additional assets are needed for the reasonable support of the surviving spouse, taking into account the probable needs of the spouse, the provisions of the will, any nonprobate property arrangements made by the decedent for the support of the spouse and any other assets, whether or not owned by the spouse, available for such support. The election is subject to the approval of the court, with or without notice to other interested persons."

[7] Plaintiff also argues that he should have been awarded the full spousal elective share under ORS 114.155 because, as he reads that statute, the conservator of a surviving spouse, once it has been determined that additional funds are required for support of the surviving spouse, is authorized to elect against the will on the surviving spouse's behalf to the extent of the entire spousal elective share. Because

In *Kirkeby*, we held:

> "The text of ORS 114.105 and ORS 114.145 specifically provides that the 'surviving spouse' may make, serve, and file the election. There is *nothing* in those provisions that suggests that the election can be served or filed by *any* other person, including the heirs of the surviving spouse. *See* ORS 174.010 (court is not to 'insert what has been omitted, or to omit what has been inserted')."

157 Or App at 322-23 (emphasis added). The legislature has not amended ORS 114.105 or ORS 114.145 since our decision in *Kirkeby*. The only statute that permits an election against a will by someone other than the surviving spouse is ORS 114.155, which allows such an election by the conservator *only* for the support of a financially incapable surviving spouse. As we explained in *Kirkeby*:

> "Implicit in [ORS 114.155] are two operative principles. First, to the extent the legislature intends to permit any exceptions to the general requirement that the election must be served and filed by the surviving spouse, it does so explicitly. ORS 114.155 is the only such statute. Second, and in all events, the election is ultimately for the surviving spouse's financial benefit and, thus, must be filed during the surviving spouse's lifetime."

157 Or App at 322-23. Thus, plaintiff's authority as conservator to claim Hazel's elective share was dependent on Hazel's need for support, and that need ended with her death. Nothing in the pertinent statutes provides for the survival of a claim for a spousal elective share after the claimant spouse's death.[8] The trial court correctly granted defendant's motion for summary judgment on plaintiff's claim seeking to exercise the spousal elective share.

To summarize, plaintiff failed to produce admissible evidence in support of his fraud-based claims. Moreover, plaintiff is not entitled to claim the spousal elective share,

---

we conclude that the spousal elective share is personal to the surviving spouse, we need not address plaintiff's argument regarding the proper valuation of such a share under ORS 114.155.

[8] Plaintiff does not assert that his claim to the spousal elective share is based on Hazel's need for support before her death; nor does he argue that he is entitled to reimbursement for expenses, if any, that were incurred for Hazel's support before her death.

because that share is personal to a surviving spouse. Because they are predicated on his claim of entitlement to the spousal elective share, plaintiff's illusory transfer and public policy claims fail as well. Accordingly, the trial court did not err in granting defendants' motion for summary judgment.

Affirmed.