Argued and submitted August 26, 2010, conviction on Count 3 reversed and remanded for entry of conviction for attempted coercion; remanded for resentencing; otherwise affirmed April 20, petition for review denied October 20, 2011 (351 Or 254)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## KORY CHRISTIAN PEDERSEN,
*Defendant-Appellant.*

Lincoln County Circuit Court
071034900; A139544

255 P3d 556

Stephanie Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the opening brief was Peter Gartlan, Chief Defender, Office of Public Defense Services. Kory Christian Pedersen filed the supplemental brief *pro se*.

Samuel A. Kubernick, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant appeals a judgment of conviction for attempted aggravated murder, ORS 161.405(2)(a), unlawful use of a weapon, ORS 166.220, coercion, ORS 163.275, resisting arrest, ORS 162.315, pointing a firearm at another, ORS 166.190, menacing, ORS 163.190, and possession of cocaine, ORS 475.884. Defendant raises several assignments of error challenging the sufficiency of the evidence, the trial court's jury instructions, and the nonunanimity of the jury verdict.[1] The latter contention has been rejected in numerous cases, *see, e.g.*, *State v. Cobb*, 224 Or App 594, 596-97, 198 P3d 978 (2008), *rev den*, 346 Or 364 (2009), and we decline to revisit it here. We write to address only (1) whether the trial court erred in denying defendant's motion for judgment of acquittal on the coercion count and (2) whether the trial court erred in refusing to give defendant's requested jury instruction defining the requisite mental state for the crimes at issue. We conclude, first, that the trial court erred in denying the motion for judgment of acquittal but remand for entry of judgment on a lesser-included offense, and, second, that the court did not err in instructing the jury. Accordingly, we reverse in part and affirm in part.

In reviewing the denial of a motion for judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Casey*, 346 Or 54, 56, 203 P3d 202 (2009). Defendant's coercion conviction is based on events that transpired during an early morning confrontation with a Lincoln County Deputy Sheriff, Miller. At about 2:00 a.m., Miller observed defendant's motor home parked at Lost Creek State Park, a day-use-only park. A permit is required for any overnight parking. Miller had previously encountered "dozens, if not a hundred" violations of the park's day-use restriction and had never before issued a citation. During a typical contact, Miller explained,

"[t]hey come to the door that I'm knocking on, and I just have a short conversation with them. Let them know, you know, it's a day-use only area. Get their information and

---

[1] Defendant also filed a *pro se* supplemental brief, which broadly challenges the evidentiary foundations of his conviction. That brief contains no assignment of error and thus we do not address its arguments. ORAP 5.45.

identify them. Let them know they're just receiving a warning for being parked in a day-use only area. Find out what's going on with their—if they're just passing through, if they're just needing to sleep a little bit to get back on the road, if something is wrong, if * * * they need a tow or gas."

Miller testified that, on this occasion, he had not decided to issue a citation at the time he made contact with defendant and that, thereafter, "[c]itations did not cross my mind."

Miller knocked on the motor home for several minutes before defendant moved to the driver's seat. Miller requested defendant's identification and asked him to step outside the vehicle, but defendant was unresponsive. He fidgeted with his sweatshirt, paced frenetically inside the cabin, and was visibly angry. After Miller repeated his commands multiple times, defendant eventually exited the vehicle, while yelling a profanity.

Miller directed defendant to keep his hands away from his body, but defendant remained agitated and did not obey Miller's command. Miller then fired his Taser at defendant in an unsuccessful attempt to subdue him. Defendant retreated to the motor home, and Miller followed him inside. In the subsequent exchange, Miller again fired his Taser at defendant and twice sprayed him with pepper spray, to no apparent effect. Defendant repeatedly yelled at Miller to "get out." Miller responded that defendant was under arrest. Defendant, who had backed into his bedroom, rummaged around near his bed. He came up suddenly, holding a .45 caliber gun, and fired two shots at Miller, who felt one of the bullets pass his hip. Miller returned fire, hitting defendant in the hand. Backup police arrived shortly thereafter and defendant was taken into custody.

Defendant was charged with attempted aggravated murder, unlawful use of a weapon, coercion with a firearm, resisting arrest, pointing a firearm at another, menacing, and possession of cocaine. On the coercion count, the indictment alleged:

"The said defendant, on or about June 16, 2007, in the County of Lincoln and State of Oregon, did unlawfully and intentionally[ ] induce Deputy Christopher Michael Miller to abstain from engaging in conduct in which [he] had a

legal right to engage, to wit: issue a citation to defendant for illegally parking his vehicle, by means of instilling in [Miller] a fear that if [he] engaged in conduct contrary to the inducement, the defendant would unlawfully cause physical injury to [Miller].

"The state further alleges the defendant committed the above-described crime using a firearm."[2]

Defendant's case was tried to a jury. Following the close of the state's case-in-chief, defendant moved for a judgment of acquittal on the coercion count, arguing that, because Miller never intended to write a parking ticket, defendant could not have induced Miller to abstain from doing so. The trial court denied the motion.

Defendant subsequently requested a special jury instruction on the definition of intent for the first six counts of the indictment (*i.e.*, all counts except possession of cocaine). The requested instruction stated, "A person acts 'intentionally' or 'with intent' when that person acts with a conscious objective to cause a particular result or engage in particular conduct." The instruction then provided definitions of intent that were tailored to the material elements of each substantive offense. For instance, on Count 1 (attempted aggravated murder), the requested instruction stated, "When used in the phrase intentionally attempted to cause the death of Deputy Christopher Michael Miller, 'intentionally' or 'with intent' means that a person acts with a conscious objective to kill another person." Defendant argued that his requested instruction, which tracked Uniform Criminal Jury Instruction 1034, was compelled by *State v. Crosby*, 342 Or 419, 154 P3d 97 (2007).

The court declined to give defendant's requested instruction and, instead, gave the following generic instruction on the meaning of intent:

"Whenever the term 'intentionally' is used in these instructions, the following definition applies. When the term 'intentionally' is used with respect to a result described by a

---

[2] The jury found that defendant did not use a firearm in the commission of the offense.

statute defining an offense or a conduct described by a statute defining an offense, it means that a person acts with a conscious objective to cause the result or to engage in the conduct so described."

As pertinent to the attempted aggravated murder charge, the court's instructions also provided that

"the state must prove beyond a reasonable doubt * * * [that defendant] intentionally attempted to cause the death of Christopher Michael Miller, another human being * * *.

"A person attempts to commit a crime when he intentionally engages in conduct that constitutes a substantial step toward commission of that crime."

Defendant excepted to the instruction, renewing his argument that, when requested, the court must give an instruction that combines the definition of intent with the material elements of the offense at issue. The trial court overruled defendant's exception, and the jury subsequently convicted defendant on all counts.

On appeal, defendant first argues that the trial court erred in denying his motion for judgment of acquittal on the coercion count. Specifically, defendant contends that the state was required to show that Miller was actually induced to abstain from writing a citation and that, because Miller never intended to issue a citation, he could not have been actually induced to refrain from doing so. The state responds that a rational factfinder could conclude that defendant's conduct caused Miller not to issue a citation. The state continues, "That is so not necessarily because the deputy was afraid of what would happen if he cited defendant, but because defendant's conduct constituted an independent crime or crimes that overrode or superseded the importance of issuing an unlawful parking ticket." In the alternative, the state argues, the evidence was sufficient to support a conviction of attempted coercion, a lesser-included offense. We conclude that the evidence is insufficient to support a conviction of coercion but remand for entry of a judgment of conviction on attempted coercion.

"In ruling on the sufficiency of the evidence in a criminal case, the relevant question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). "[W]e usually first determine what, precisely, the legislature intended to require the state to prove." *State v. Lockamy*, 227 Or App 108, 113, 204 P3d 822 (2009).

The crime of coercion is defined in ORS 163.275(1), which provides, in part:

> "A person commits the crime of coercion when the person compels or induces another person to * * * abstain from engaging in conduct in which the other person has a legal right to engage, by means of instilling in the other person a fear that, if the other person * * * engages in conduct contrary to the compulsion or inducement, the actor or another will:

> "(a) Unlawfully cause physical injury to some person[.]"

Thus, for purposes of this case, coercion has the following three elements: the accused must (1) induce a victim to abstain from doing something; that (2) the victim has a right to do; by (3) making the victim afraid that if he or she does it, one of the enumerated consequences will result. *See State v. Phillips*, 206 Or App 90, 95, 135 P3d 461, *rev den*, 341 Or 548 (2006) (describing the three elements). The first element "requires proof that the victim was *actually compelled or induced* to abstain from engaging in the conduct in which she had a right to engage or not to engage." *State v. Johnson*, 110 Or App 362, 363, 822 P2d 153 (1991) (emphasis added) (reversing coercion conviction where trial testimony conclusively showed that the victim was not actually compelled or induced by the defendant's threats).

Here, the indictment alleged that defendant induced Miller to abstain from issuing a parking citation by instilling in him a fear that, if he did cite defendant, defendant would cause him physical injury. Defendant does not dispute that Miller had a right to issue him a parking citation. Nor, apparently, does defendant dispute that he made Miller afraid

that, if he issued a parking citation, defendant would inflict physical injury.[3] Instead, defendant argues only that there was insufficient evidence to establish the first element of coercion: that Miller was, in fact, induced to abstain from issuing a citation.

We turn, then, to the meaning of "induces" as used in ORS 163.275(1).[4] In construing a statute, we give words of common usage their plain and ordinary meaning. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). "Induce" is variously defined as "to move and lead (as by persuasion or influence) * * * : prevail upon : INFLUENCE, PERSUADE," "to inspire, call forth, or bring about by influence or stimulation," or "to bring on or bring about : EFFECT, CAUSE." *Webster's Third New Int'l Dictionary* 1154 (unabridged ed 2002); *see also State v. Paige*, 55 Or App 519, 521, 638 P2d 1173, *rev'd on other grounds*, 293 Or 453, 649 P2d 569 (1982) (noting definitions of "compel" and "induce"). Those definitions suggest that a defendant must influence or persuade a victim to alter his or her course of conduct—to do something that the victim otherwise would not have done or to not do something which the victim otherwise would have done—in order to "induce" that person. In *Phillips*, for instance, the victims tried to leave the defendant's apartment, but the defendant made them stay. 206 Or App at 96-97 (holding that a rational trier of fact could infer from the evidence that the victims would have left earlier had they not been compelled to stay out of fear). Here, by contrast, there is no evidence in the record that Miller would have written a citation absent defendant's conduct. Indeed, Miller's testimony indicates that he never had a desire to cite defendant and never before had issued such a citation in any circumstance. Simply put, Miller could not have been induced to refrain from doing something that he was not going to do anyway.

---

[3] Because the jury found that the crime of coercion was not committed with a firearm, Miller's fear-induced compliance must have occurred sometime before defendant grabbed his gun.

[4] We note that the statutory text refers to "compels or induces." However, the indictment alleged only that defendant "induced" Miller not to issue a citation. Thus, we need not also examine the meaning of "compels."

The state argues that Miller never had the opportunity to write a citation because "defendant's conduct constituted an independent crime." In other words, the state argues that defendant's conduct was, broadly speaking, a cause of Miller's failure to cite defendant for a parking violation—"not necessarily because [Miller] was afraid," but because dealing with defendant's conduct "superseded the importance of issuing" a parking citation. That argument is unavailing. The essence of coercion is fear-induced compliance, *i.e.*, the victim complies *because he or she is afraid,* not for some independent reason. *See State v. Robertson*, 293 Or 402, 416, 649 P2d 569 (1982) (explaining, with regard to a prior version of the statute, that "the crime is not made out if the addressee, though frightened, does not comply or if he acts for reasons independent of the demand or the threat"); *id.* at 418 ("The target of the law is the effective use of fear to induce compliance with a demand."). That Miller chose not to cite defendant, because he and defendant were preoccupied with other matters (including, ultimately, an exchange of gunfire), does not establish that he was induced by a fear that, if he did write a ticket, defendant would physically injure him. Because coercion requires actual compulsion or inducement, and there is no evidence that Miller was actually provoked not to cite defendant, the trial court erred in denying defendant's motion for judgment of acquittal on that count.

The state nonetheless contends that the evidence is sufficient to support a conviction on the lesser-included offense of attempted coercion. We agree. An attempt requires that defendant "intentionally engage[ ] in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405. Defendant does not dispute that there was sufficient evidence for the jury to find that he took actions to make Miller afraid that, if he issued defendant a citation, defendant would physically injure him. Nor does defendant dispute that his conduct constituted a substantial step toward commission of coercion. Rather, defendant argues only that (1) the state would have to prove that "Miller issued a citation despite defendant's best efforts to prevent that conduct" and (2) "defendant is not guilty of attempted coercion[ ] because Miller never had the intent to issue a citation."

There is nothing in ORS 161.405 (attempt) or ORS 163.275 (coercion) that requires the victim to engage in conduct contrary to and in spite of the defendant's coercive inducements in order to establish an attempted coercion. Although, in many cases of attempted coercion, the defendant will have been unsuccessful precisely because the victim acts contrary to the defendant's inducements, *see, e.g.*, *State v. Garcia*, 206 Or App 745, 138 P3d 927 (2006) (evidence was insufficient to support coercion conviction, but sufficient to support attempted coercion conviction, where the victim testified at trial despite the defendant's death threats), the victim is not required to do so as a predicate of the offense. Unlike the crime of coercion, the crime of attempted coercion is focused entirely on the defendant and whether he took a substantial step toward commission of the crime. Thus, Miller was not required to cite defendant in order to establish attempted coercion. As noted, defendant does not dispute that he took a substantial step towards the commission of coercion.

Moreover, for purposes of attempted coercion, it is immaterial that Miller never intended to issue defendant a citation. Defendant's argument to the contrary apparently relies upon the notion that it was impossible for defendant to induce Miller to refrain from issuing a citation because Miller never intended to do so. But factual impossibility is not a defense to an attempt crime. ORS 161.425 ("In a prosecution for an attempt, it is no defense that it was impossible to commit the crime which was the object of the attempt where the conduct engaged in by the actor would be a crime if the circumstances were as the actor believed them to be."); *see also State v. Niehuser*, 21 Or App 33, 37-38, 533 P2d 834 (1975) (applying ORS 161.425 to find that the defendant was guilty of attempted theft even though it was impossible for him to commit the completed crime). Thus, although the evidence was insufficient to support a conviction of coercion, the jury necessarily found that defendant took a substantial step towards commission of that crime, and we have no occasion to revisit the sufficiency of that finding. Accordingly, we remand for entry of a judgment of conviction on the lesser-included offense of attempted coercion. *See Garcia*, 206 Or App at 752 (remanding for entry of judgment on attempted

coercion where the evidence was insufficient to support a conviction of coercion).

Defendant lastly challenges the trial court's failure to give his requested jury instruction on the meaning of intent. He argues that the trial court's instruction was erroneous because it required the jury to determine, on its own, which material element of each offense was required to be undertaken intentionally. More specifically, defendant argues that, because the instruction defines the term "intentionally" as a "conscious objective to cause the result *or* to engage in the conduct so described," it permitted the jury to find that he acted intentionally if it was his conscious objective to "engage in [particular] conduct" even if it was not his conscious objective to "cause [a particular] result." Thus, with regard to the attempted aggravated murder charge, defendant contends that the instruction allowed the jury to convict him on finding that he intentionally engaged in a substantial step (*i.e.*, shooting at Miller) without additionally finding that he intended to kill Miller.[5] Defendant further contends that his proposed instruction, which provided definitions tailored to the material elements of each offense, was mandated by *Crosby*, 342 Or 419. We conclude that the trial court's instruction correctly stated the law and that the court did not err in refusing to give defendant's requested instruction.

"In determining whether it was error to give a particular instruction, we read the instructions as a whole to determine whether they state the law accurately." *State v. Woodman*, 341 Or 105, 118, 138 P3d 1 (2006). "It is not error for a trial court to refuse to give a requested instruction if the instruction given by the court, although not in the form requested, adequately covers the subject of the requested instruction." *State v. Tucker*, 315 Or 321, 332, 845 P2d 904 (1993).

---

[5] Although defendant assigns error to the instruction as applied to six of the charges, he most forcefully argues that the instruction was error as applied to the attempted aggravated murder charge. Defendant does not develop an argument that any of the remaining charges require both intended conduct and an intended result. Consequently, we focus primarily on the attempted aggravated murder charge.

The Supreme Court considered an analogous argument in *Woodman*. In that case, the defendant, who had been convicted of murder, argued that the trial court's jury instruction on the meaning of intent—"a conscious objective to either cause a particular result, or to engage in particular conduct"—was error because it suggested "that a person could be convicted of murder if the person 'engaged in conduct' that 'caused the death of another human being,' even if the person did not intend that result." 341 Or at 117-18. The defendant asserted that the court should have omitted the phrase "or to engage in particular conduct" in order to prevent the jury from mistakenly concluding that he need not intend "to cause a particular result," *i.e.*, the death of the victim, in order to commit murder.

Although the Supreme Court acknowledged that the defendant's requested instruction may have been clearer than the instruction given, it concluded that the trial court's instructions as a whole "accurately reflected the statutory requirements":

> "In the context of the intentional murder charge, the jury would have understood the words 'particular conduct' in the phrase 'conscious objective to * * * engage in particular conduct' to mean conduct intended to cause the death of another. So understood, the 'engage in particular conduct' part of the instruction conveyed the same meaning as the 'cause a particular result' part of the instruction because both parts required the jury, to convict defendant of intentional murder, to find that defendant acted 'with a conscious objective' that his actions would result in the death of [the victim]."

*Id.* at 119 (omission in *Woodman*).

Defendant contends that this case is distinguishable from *Woodman* because the main crime at issue here is an *attempted* murder, which involves both conduct (a substantial step) and a result (the intended death of the victim). Defendant argues that, "[b]ecause the jury had to struggle with dual concepts in an attempt crime," the trial court's generic instruction created an ambiguity about whether "intentionally" applied to conduct or to a result, permitting the jury to convict defendant on finding that he intended to

shoot at Miller, even if it did not find that he intended to cause Miller's death. Although we agree that the circumstances here are somewhat different than those in *Woodman*, we nonetheless conclude that the instructions, as a whole, accurately stated the law.

In order to determine the specific material element to which a requisite mental state relates, we look to the substantive criminal statute defining the offense at issue. *Crosby*, 342 Or at 428-30. "Attempt" is defined at ORS 161.405: "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime." A criminal homicide occurs when a person, with a culpable mental state, "causes the death of another human being." ORS 163.005(1). In turn, "criminal homicide constitutes murder * * * [w]hen it is committed intentionally." ORS 163.115(1)(a). Finally, the term " '[i]ntentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described." ORS 161.085(7). Thus, an attempted murder occurs when a person, with intent to cause the death of another human being, intentionally engages in conduct (*i.e.*, takes a substantial step) towards that end.

Here, the trial court first instructed the jury that "the State must prove beyond a reasonable doubt" the elements of attempted aggravated murder, including that defendant "intentionally attempted to cause the death of Christopher Michael Miller, another human being." The court then defined attempt consistently with its statutory definition. And, lastly (as pertinent to the issues here), it defined "intentionally" in a manner that also closely tracked its statutory definition. Those instructions did not misstate the law. Moreover, as defendant seems to recognize, attempted aggravated murder has elements of both conduct and a result to which the mental state "intentionally" is directed.[6] Specifically, in order to convict defendant of that

---

[6] Although attempted aggravated murder also requires the state to prove the existence of certain circumstances, defendant does not challenge the instructions in that regard. Thus, we need not discuss that aspect of the instructions.

charge, the jury was required to find that he intentionally engaged in a substantial step (shooting at Miller) with intent to cause a particular result (Miller's death). The instruction directs that when an intentional offense is defined by a "result" or "conduct," a person must act "with a conscious objective to cause the result or to engage in the conduct so described." We do not read the instruction to imply that, when an offense requires both conduct and a result, a defendant must intend either the conduct or the result. Thus, the instruction on intent necessarily applied to both conduct and a result. The jury would have understood that the conduct engaged in by defendant—the substantial step—must have been intended to cause the death of another. Thus, the instruction, viewed in context, was not erroneous.

*Crosby* does not compel a different conclusion. In *Crosby*, the defendant was charged and convicted of first-degree manslaughter after her mother died of infected bedsores. 342 Or at 421. The defendant appealed, assigning error to the trial court's clarifying jury instruction on the definition of "recklessly." The court's original instruction stated that a person acted recklessly if he or she was "aware of and consciously diregard[ed] a substantial and unjustifiable risk either" that "a particular result will occur" or that "a particular circumstance exists." *Id.* at 422. The jury asked the court to clarify whether the "particular circumstance" referred to death or " 'just exist[e]nce of skin breakdown [*i.e.*, bedsores].' " *Id.* at 423. The court responded that "a particular circumstance" did "not necessarily mean only one thing in this case" and that the jury "should decide what circumstances should be considered" in light of all the instructions. *Id.* The defendant argued that that instruction allowed the jury to convict her based on her awareness of "skin breakdown" without regard to whether she was aware that skin breakdown created a risk of death.

After examining the statute defining first-degree manslaughter, the Supreme Court determined that the object of the mental state "recklessly" was a result: "causes death." *Id.* at 430-31. Because, under the circumstances of the case, the mental state did not refer to the existence of *any* circumstance, including "skin breakdown," the trial court's clarifying instruction was erroneous. *Id.* at 431-32. The

Supreme Court noted, however, that if the mental state referred to more than one "particular circumstance," then the trial court's clarifying instruction would have been accurate. *Id.* at 431 n 11.

Here, the jury instruction was not "clearly and specifically wrong," as it was in *Crosby*. *Id.* at 435. Rather, as noted, the mental state referred to both particular conduct and a particular result in the context of the aggravated murder charge. Furthermore, the court's general instruction on the meaning of intent applied to five other charges against defendant. Defendant acknowledges that the material elements of some of those charges involved conduct, while others involved a result. The trial court's instruction directed the jury that the definition of "intentionally" applied to conduct or a result depending on the substantive elements of each crime. That instruction did not contain superfluous or misleading components as the *Crosby* instruction did. It provided accurate, if somewhat general, guidance to the jury on what it was required to find. Thus, the instruction was not given in error.

Defendant nonetheless relies on *dicta* in *Crosby*, which suggested that

> "[t]he bare terms 'particular result' and 'particular circumstance' do not adequately convey to a jury the required link between reckless conduct and the results or circumstances specified in the underlying criminal statute. Furthermore, a trial court should not instruct the jury that the mental state relates to both a result and a circumstance, unless that is accurate in the context of the particular crimes that have been charged. As this opinion demonstrates, a defendant's objection in a similar context to the [original instruction] defining 'recklessly' would be well taken."

*Id.* at 435 n 12. That footnote does not demonstrate that a tailored instruction is unequivocally required regardless of the circumstances of the case. Rather, those statements simply demonstrate that, in the context of that case, a general instruction would have been inappropriate because there were no "circumstances" to which the mental state could have related. Here, as noted, it was correct to instruct the jury that the mental state related to a result or conduct,

depending on the substantive definition of the crime. The statements in *Crosby* cited by defendant do not suggest that an instruction must go further and link the definition of intent to the material elements of each offense.[7]

We cannot say the trial court's instruction created an erroneous impression of the law or that defendant was entitled to his requested instruction. "Defendant is not entitled to reversal merely because he believes that his proffered instruction stated the law more clearly than did the trial court's instructions, if the instructions given correctly and completely addressed the issues." *State v. Barnes*, 329 Or 327, 334, 986 P2d 1160 (1999).

Conviction on Count 3 reversed and remanded for entry of conviction for attempted coercion; remanded for resentencing; otherwise affirmed.

---

[7] Defendant's arguments concerning the application of the intent instruction to the charges other than aggravated murder are premised on the notion that the trial court was required to give tailored instructions for each offense. Because we reject that premise, we necessarily reject defendant's assignments of error relating to those charges.